Greg Morgan
920 Foxon Road #466
East Haven, CT  06513
Telephone: (203) 671-3858
Fax: (661) 952-1902
Email: greg@morganclan.mobi
Pro Se

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREG MORGAN, | **Case No.:** 07-1748 (RMU) |
| **Plaintiff,** | **PLAINTIFFS' REPLY MEMORADUM TO FILE A FIRST AMENDED COMPLAINT** |
| v. | |
| FEDERAL AVIATION ADMINISTRATION, et al., | |
| **Defendants.** | |

**PLAINTIFFS' REPLY MEMORADUM TO FILE A FIRST AMENDED COMPLAINT**

---

## I.   ARGUMENT

### A.  Defendants Have Prejudiced Plaintiff Again, By Combining Motion Not Allowed And Late Filing Opposition Due

The Federal Rules of Civil Procedure are designed to do "substantial justice". See Fed.R.Civ.P. 1. The concept of substantial justice not only belongs to Defendants it also belongs to Plaintiff. Justice is administered by the courts through the rules.

Now in their latest's round of procedural shortcomings, Plaintiff is once again substantially prejudiced. Defendant's opposition to Plaintiff's Fed.R.Civ.P. 15 motion is late. LCvR 7(b)

1   provides that Defendant's were "[w]ithin 11 days of the date of service" of Plaintiff's Motion To

2   Amend His Complaint, file said opposition, they did not. See LCvR 7(b). Plaintiff's amendment

3   motion as the docket shows, was served upon Defendants on September 3, 2009. Accordingly

4   Defendants opposition was due on September 14, 2009. Because Defendant's are late, and

5   because LCvR 7(b) further provides that "the Court may treat the motion as conceded" and

6   because Defendant's have not even bothered to moved the Court for an order relieving them of

7   deadlines, Plaintiff urges the Court to treat Plaintiff's Motion to Amend his Complaint as

8   conceded.

9        Plaintiff is substantially, prejudiced by the Defendant's latest round of procedural

10   shortcomings. The bulk of Defendant's submission addresses the proposed amended complaint

11   yet the first part of their submission pertains to an effort to renew a previously failed effort for

12   judgment on the pleadings/summary judgment. What is Plaintiff responding to? Does he have 5

13   day as a reply to the opposition to his motion to amend or does he have 11 days to reply to the

14   new motion under Rule 12? This Court quoting Foman said in is MEMORANDUM OPINION

15   [(hereinafter "MEMO")]", Granting the Defendants' Motion for Leave to File an Amended

16   Answer, "Indeed, allowing the defendants to amend their answer will avoid a situation in which

17   the plaintiff must respond to the dispositive notion without "the advance notice required by Rule

18   8(c) that would have enabled it to develop factual and legal defenses fully…."

19        Plaintiff is unable to make sense of what Defendants are doing and is left in state of

20   wonderment as to what he should do. This is true, because if Defendants latest filing is now a

21   Fed.R.Civ.P. 12(c) motion as they assert it should treated as, different legal standards apply. So

22   is this latest filing a new motion or a continuation of the old motion? What ever it should be

23   deem as, Defendant's under any Rule 12 motion, may not as they have done, combine an

24   opposition to Plaintiff's effort to amend his complain. See Fed.R.Civ.P. 12 (g)(1) "A motion

25   under this rule may be joined with any other motion allowed by this rule" (and clearly not

1   included are t motions arising under other rules). Defendant's procedural shortcoming deprives

2   Plaintiff the ability to "develop [his] factual and legal defenses fully…." Accordingly, Plaintiff

3   urges the Court to treat Plaintiff's Motion to Amend his Complaint as conceded.

4   **B.  The Proposed Amended Complaint Is Clean Of Issue Preclusion**

5       Defendants argue futility in sweeping terms that the "proposed amended complaint" is

6   barred by "res judicata (claim preclusion) and collateral estoppel (issue preclusion)". See

7   DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

8   (hereinafter, "Oppo"), at page 4. Yet this Court in granting Defendant's motion to amend their

9   answer clearly stated in its MEMO that as to the original complaint, Plaintiff's FLSA claims had

10  a gloss of "issue preclusion" and Plaintiff's FEHA claim would suffer from claim preclusion.

11  Defendant other than taking issue to the party name change, make no substantive argument as to

12  why Plaintiff's proposed amended complaint suffers from issue preclusion.

13      You're Honor in his MEMO cited specific factual issue raised in Plaintiff's original

14  complaint which "contradict the factual findings of the administrative judge in the MSPB

15  action." See MEMO at 4. This Court said, "Specifically, the plaintiff states in the declaration in

16  support of his complaint that on February 16, 2005, Marmet instructed him to obtain medical

17  documents before his next shift, which was to begin later that evening, or he would be "sent

18  home" and have to work an "administrative day" the following day. Morgan Decl. ¶ 5. By

19  contrast, the administrative judge concluded that Marmet was not at work that day…."

20      From that, this Court held as to Plaintiff's FLSA claims, count 1 & 2 of the original

21  complaint:

22          "Amending the defendants' answer to include the affirmative defense of issue
            preclusion would not be futile because the factual determination underlying the
23          administrative judge's ruling affirming the DOT's removal of the plaintiff are
            identical to those implicated by the plaintiff's FLSA claims. *See* Defs.' Reply at 7.
24          Namely, the court would need to determine if the overtime was authorized to
            assess whether it was compensable, or whether the FAA violated the FLSA as the
25          plaintiff claims. *See* Compl. ¶¶ 14-27." See MEMO at 10.

3

1    Under the doctrine of issue preclusion, a right, question, or fact distinctly put in issue, and

2  directly determined by a court of competent jurisdiction as a ground of recovery, cannot be

3  disputed in a subsequent suit between the same parties or their privies. See *Southern P. R. Co. v.*

4  *United States*, 168 U.S. 1, 48, 18 S. Ct. 18, 42 L. Ed. 355 (1897). This does not mean that a cause

5  of action cannot arise out of same or similar fact; it means that such fact cannot be disputed or

6  otherwise re-litigated in a subsequent suit. See *Neaderland v. Commissioner*, 424 F.2d 639, 642

7  (2d Cir. 1970) (even if issue is identical and facts remain constant, doctrine doesn't apply unless

8  matter in second involves subsequently "the same bundle of legal principles that contributed to

9  the rendering of the first judgment," citing *Commissioner v. Sunnen,* 333 U.S. 591 (1948).

10    In MSPB action which this Court is aware, was decided on "July 14, 2006." The AJ cited

11  as the legal and procedural principles for his decision as "5 U.S.C. § 7513(a)." In *Brock v.*

12  *Williams Enters. of Ga., Inc*., 832 F.2d 567, 574 (11th Cir. 1987) the Court held "[C]ollateral

13  estoppel is a discretionary doctrine that has no application where there has been an intervening

14  change in legal principles," citing Restatement (Second) of Judgments § 28(2)(b) (1982)). This

15  Circuit follows the Restatement view. See *McLaughlin v. Bradlee*, 803 F.2d 1197, 1203, 256

16  U.S. App. D.C. 119 (D.C. Cir. 1986) (although issues of both cases were not same, most

17  considerations enumerated in Restatement (Second) of Judgments § 27 cmt. c (1982) favored

18  preclusion).

19    In *Hart v. Department of Transportation*, 2008 M.S.P.B. 149, 109 M.S.P.R. 280, P 10

20  (2008), the Board has advanced a significant change in its legal principles much upon the lines as

21  Plaintiff did in his Motion for Judgment on the Pleadings. In *Hart*, the Board held for the first

22  time "the FAA is not covered by chapter 75 of Title 5, U.S.C." and therefore has disavowed the

23  legal and procedural principles used against Plaintiff in that action. Because this Circuit has

24  adopted the Restatement view and there has been in fact an intervening change in legal principles

25  since the MSPB action, issue preclusion does not apply to this action.

1      Moreover, because the proposed amended complaint makes no mention of Marmet, does not

2  run crossways to the AJ prior findings, there is no issue to be re-determined. See *Paine &*

3  *Williams Co. v. Baldwin Rubber Co*., 113 F.2d 840, 843 (6th Cir. 1940) (an issue is defined as a

4  "single, certain, material poin**t").**

5      Additionally, Defendant's argument that "the court would need to determine if the overtime

6  was authorized to assess whether it was compensable" is false. The issue whether Plaintiff is by

7  law entitled to paid overtime for work actually performed is a separate and discreet issue to

8  whether overtime was authorized or not.  The Administrator of the Wage and Hour Division,

9  U.S. Department of Labor said at 29 C.F.R. § 778.316, titled "**Agreements or practices in**

10  **conflict with statutory requirements are ineffective**" and provides in relevant part:

11          "An announcement by the employer that no overtime work will be permitted, or
              that overtime work will not be compensated unless authorized in advance, will not

12          impair the employee's right to compensation for work which he is actually
              suffered or permitted to perform." See 29 C.F.R. § 778.316.

13

14  These regulations are promulgated pursuant to an express delegation of legislative authority and

15  must be given controlling weight unless they are found to be arbitrary, capricious, or contrary to

16  the statute. *See Chevron U.S.A.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837

17  (1984).

18      Yet the proposed amended complaint does not implicate Marmet or Contatore in any way

19  rather it states in relevant part:

20          "On or about the week of February 16, 2005, plaintiff was suffered and/or
              permitted to work in excess of 40 hours per week, to obtain and submit medical

21          information and/or documentation from his treating physician in furtherance of
              the required medical clearance." PAC at ¶ 23

22

23      Thus even if it can be found that the proposed amended complaint with regard to the FLSA

24  claims suffers from authorized or not, the issue is as the complaint states, pay me.

25

**C. Qualified Immunity—Defendants Inject New Terminology To Create A Basis For Qualified Immunity Defense**

It is an undisputed and an admitted fact that in order for Plaintiff to retain his job, he must maintain a medical clearance. See OPPO at 7. Now Defendants claim they are entitled to a "qualified immunity" defense and introduce this late defense stating:

> "It is undisputed that Plaintiff was an air traffic control specialist. FAA air traffic control specialists, who direct, control and separate live air traffic, are required to undergo **periodic medical certification examinations**. See Article 66 of the National Air Traffic Controllers Associations ("NATCA") collective bargaining agreement ("CBA") with the FAA (September 3, 2006). Exhibit 1, hereto." See Oppo at 7, emphasis added.

Throughout their opposition to Plaintiff's Motion to Amend his Complaint, Defendant's claim late a newly created "qualified immunity" defense. They do so by introducing new terminology not previously present in any of the litigation which Plaintiff was involved; they introduce the new term "**periodic medical certification examinations**", the short version of which is, "**medical examination**" and use it throughout their newly created but late coming "qualified immunity" claim.

Upon their newly introduced terminology, Defendants attempt a fundamental change by re-characterizing the event of February 16, 2005, as a "**medical examination**" stating:

> "The Administrator chose to delegate responsibility for creation of the overtime compensation policy related to **medical certification examinations**." See Oppo at 7, emphasis added.

From this fundamental change re-characterizing the event of February 16, 2005 as a "**medical examination**", Defendants seek to establish the basis for their newly asserted yet late "qualified immunity" claim, stating:

> "The managers in the High Desert TRACON, including Ms. Marmet, chose to interpret Plaintiff's request for overtime on February 16, 2005, as a request under Section 9 of Article 66 of the NATCA CBA with the FAA. Ms. Marmet made a policy judgment and is therefore entitled to qualified immunity." See Oppo at 7, emphasis added.

6

1    Defendant's rely upon and claim that "Article 66 of the NATCA CBA" which they include

2    as "ATTACHMENT 1" to their opposition, gives the "managers in the High Desert TRACON"

3    discretion to make "a policy judgment and is therefore entitled to qualified immunity." See Oppo

4    at 7. Read in its totality, "Article 66", the provision which Defendants rely relates only to an

5    employer initiated "**medical examination**". For example, "Medical clearance examinations shall

6    be conducted by an Agency medical officer or a certified Aviation Medical Examiner (AME)"

7    and "[a]ll medical examinations required by the Employer shall be scheduled on duty time." See

8    Oppo at ATTACHMENT 1, §§ 2 & 4. "Section 9 of Article 66" is nothing more than a

9    continuation of the overall regimen relating to employer initiated "**medical examination**" i.e.,

10   "It is the employee's responsibility to report for medical exams scheduled by the Employer" and

11   for which purpose is to set forth particulars as to what to do with an employee who's "medical

12   certificate expires" due to a medical determination not being timely rendered. See Oppo at

13   ATTACHMENT 1, Section 9 of Article 66.

14       From this false basis for their newly asserted yet late "qualified immunity" claim,

15   Defendants lay claim that:

16           "Neither Ms. Marmet or any other managers in High Desert TRACON assigned
             or authorized Plaintiff to undergo a **medical examination** on February 16, 2005."
17           See Oppo at 8, emphasis added.

18   Thereafter, Defendants wildly argue that because *an employer initiated* "**medical examination**"

19   is scheduled by them, Plaintiff went rouge[1] and scheduled his own "**medical examination**" and

20   then undertook it and then claimed overtime for that event. Well certainly, if that were the case,

21   we would be dealing with more than 45 minutes of overtime wouldn't we?

22

23

24   _____

25   [1] Stating "Neither Ms. Marmet or any other managers in High Desert TRACON assigned or
     authorized Plaintiff to undergo a **medical examination** on February16, 2005.  Rather, Plaintiff
     was explicitly told by his manager not to undertake the activity during duty time." See Oppo at 8.

**D.  The Definition For Defendant's New Terminology Defeats Their "Qualified Immunity" Claims**

The first problem with Defendant's "qualified immunity" defense is the new terminology they seek to interpose into this action. The terms "**periodic medical certification examinations**" and "**medical examination**" have discrete meanings.

The term "**periodic medical certification examinations**" has a clear meaning which definition is contained in an attachment to Plaintiff's proposed amended complaint at EXHIBIT NINE AT PAGE 5, and provided as, FAAO 3930.3A CHG 1, Air Traffic Control Specialist Health Program. A "**periodic medical certification examinations**" means "a required basic medical examination performed at scheduled frequency to determine whether medical standards are met. *Id*. The definition by its own terms demonstrates that Plaintiff had no ability as is now claimed, to initiate, attend and request overtime for "**periodic medical certification examinations**". These type of examinations are "performed under the ATCS Health Program" and "are scheduled by Facility Managers" in the "birth-month"[2] of the employee. See Id at ¶ 32 c, pg., 13.[3] Because February has no relationship to Plaintiff's birth month, he could therefore not have been "undergo[ing] a medical examination on February 16, 2005" as now claimed by Defendants. See Oppo at 8.

---

[2] See also DECLARATION OF GREG MORGAN attached to his proposed amended complaint, stating at ¶2 a, "As an Air Traffic Control Specialist, it was required of me to maintain a specific medical standard with **periodic medical examination** usually given annually and given usually during the employee's month of birth. Because my birth month was November, my last **periodic medical examination** occurred during November 2004. At no time during my **periodic medical examination** was I informed that additional medical information was needed to continue my medical clearance. At no time after the **periodic medical examination** and before February 16, 2005, was I informed that my mandatory medical clearance was in jeopardy of rescission, suspension and/or termination and that medical information and/or documentation from my treating physician was required to continue my medical clearance." Emphasis added.

[3] Additionally, this reference makes specific reference to the CBA provision cited by Defendants.

1      Clearly shown, the new terminology they interpose into this action is the means to provide

2  the basis for Defendants new but yet late "qualified immunity" claim. The definitions of such

3  defeat their claim. Other than wild conjecture, Defendants have failed completely to demonstrate

4  and failed completely they could ever demonstrate that the events surrounding February 16, 2005

5  was that of an employer initiated "**medical examination**" undertaken by Plaintiff. Accordingly,

6  Defendant's lack a key prerequisite ingredient to any "qualified immunity" claim, that is, they

7  actually did "exercise a discretionary function by making a policy judgment". This is true

8  because in the first place, the very meaning of the terms which they rely shows they could not

9  have invoked any discretionary function and such defeats any "qualified immunity" claim.

10      Secondly, at bottom, Defendants claim the proposed amended complaint is futile stating,

11  "the proposed pleading would not survive a motion to dismiss." [citing] Nat'l Wrestling Coaches

12  Ass'n v. Dep't of Educ., 366 F.3d 930, 945 (D.C. Cir. 2004)". They assert because of their

13  "qualified immunity" claim such would be cause for purposes of amending the complaint, a

14  dismissal. This claim is widely opportunistic for many reasons. Under it own terms a party

15  moving for dismissal bears the burden of persuasion. The non-moving party has the presumption

16  of truth.

17      At the time Defendant were to actually raise their late "qualified immunity" defense based

18  upon "**medical examination**" claim, the proposed amended complaint (and original complaint)

19  would be taken as true. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept

20  as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89,

21  94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)) (other citations

22  omitted). The proposed amended complaint states in relevant part,

23            "On or about the week of February 16, 2005, plaintiff was suffered and/or
               permitted to work in excess of 40 hours per week, to obtain and submit medical

24            information and/or documentation from his treating physician…." POC ¶ 23.

25

1    Defendants therefore cannot overcome the strong presumption in the law that Plaintiff's

2    (sworn) allegations are true, and theirs are not. A court may not grant a motion to dismiss for

3    failure to state a claim "even if it strikes a savvy judge that . . . recovery is very remote and

4    unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted). "So long as

5    the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court

6    may not dismiss." *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) (quoting *Twombly*,

7    550 U.S. at 557).

8    A "**medical examination**" taken under the auspice of the "ATCS health program" and

9    "additional medical information" in the form of "doctors notes" arising from a private doctor

10   visit taken months prior and paid for by Plaintiff through his private medical insurance are

11   completely different matters. See POC at Dec of Greg Morgan ¶ 2 g. "I went straightaway to

12   Kaiser Medical, and retrieved the medical information and/or documentation…." In order to

13   sustain their "**medical examination**" claim, Defendant's would have to prove as their cited

14   provision of the CBA require, Plaintiff's private doctor was 1) an "Agency medical officer" or 2)

15   a "certified Aviation Medical Examiner (AME)."[4] See Section 2 of Article 66.

16   Moreover, your Honor has already decided that Plaintiff did not take a "**medical**

17   **examination**" as Defendants now claim on "February 16, 2005". Rather, your Honor correctly

18   said in MEMO, the complaint alleges that Plaintiff was "'gather[ing] information' from his

19   physician for his 'medical clearance'". See MEMO at 2 & 4. Additionally, the overwhelming

20   documentary evidence thus far submitted by Plaintiff and Defendants proves the basis for their

21   "qualified immunity" defense has no merit. For example, an attachment to Plaintiff's proposed

22

23   _____

24   [4] The term "Aviation Medical Examiner" or (AME) also has a clear meaning defined by
     regulation, **"**a private physician designated by the FAA, and specifically authorized to perform
25   ATCS Health Program examinations." See FAAO 3930.3, Plaintiff's EXHIBT 9 at page 6.

1  amended complaint at EXHIBIT SIX and EIGHT show the reason for Plaintiff's impending

2  medical termination was due to a lack of information and certainly not for want of a "**medical**

3  **examination**" See EXHIBIT SIX and EIGHT, " Requested information **due** on or before

4  clearance termination." *Id.*

5        Defendant's argument centers upon futility as to the proposed amended complaint. They

6  assert that the proposed amended complaint would not survive a "motion to dismiss" citing

7  *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004). That case

8  is of no hope to there cause here. The issue in the just cited case was that the Plaintiff therein

9  lacked "Article III standing" to bring a cause of action. That is quite different than the

10  circumstance here. At best, Defendants merely create a disputed material fact not amenable to a

11  motion to dismiss.

12        This raises the third problem.  Defendants answer and their amend answer makes no

13  mention of "qualified immunity" based upon a "**medical examination**" taken by Plaintiff on

14  February 16, 2005. The paint is hardly dry on Defendant's amended answer. Defendant's words:

15  "The amendment Plaintiff seeks is a change in form rather than substance." See Oppo at 7.

16  Defendant's assertion that Plaintiff's amendments lack substance is of no help to them as it

17  serves as an admission that they could have raised a "quality immunity" claim long ago.

18        The defense of qualified immunity is an affirmative defense. *See Pate v. United States*, 277

19  F. Supp.2d 1, 7 (D.D.C. 2003) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).

20  "Affirmative defenses must be raised in a responsive pleading, not a dispositive motion." *Harris*

21  *v. United States Dep't of Justice*, 126 F.3d 339, 341 (D.C. Cir. 1997)." A party's failure to plead

22  an affirmative defense . . . generally results in the waiver of that defense and its exclusion from

23  the case.'" *Id.* at 343 (quoting *Dole v. Williams Enterprises, Inc.*, 876 F.2d 186, 189 (D.C. Cir.

24  1989) (emphasis in original) (internal citation omitted)). In *Lerner v. District of Columbia*, 362

25  F. Supp. 2d 149, 162 (D.D.C. 2005) the Court denied the defendants in that action a "qualified

1   immunity" defense because like here but more so, they "failed to plead the affirmative defense of

2   qualified immunity in either of their two previous motions to dismiss" as well as failing to plead

3   in an amended answer. *Id*. Thus Defendants assertion that they could successfully raise

4   "qualified immunity" defense here is pure speculation and perhaps wishful thinking.

5        As the case presently stands, the Court is confronted with a motion to amend the pleadings,

6   a late response and this reply. Unless and until the Court does actually grant Plaintiff's Motion to

7   Amend, the original complaint remains the operative complaint. Similar to the proposed amend

8   complaint, the original complete pleads in relevant part:

9           "On or about the week of February 16, 2005, defendant ordered and/or required
            and/or suffered and/or permitted plaintiff to work in excess of 40 hours per week,
10          to obtain and produce to defendant, medical information and/or documentation
            from his treating physician in furtherance of the medical clearance." See original
11          complaint at ¶ 15.[5]

12  Defendants just having now amended their answer again admit as follows:

13          "Defendants admit that it advised Plaintiff to obtain medical information in order
            to maintain his medical clearance." See Amended Answer at ¶ 15.

14

15       Again, your Honor already stated in his MEMO what Plaintiff was actually doing and he

16  was certainly not undertaking a "**medical examination**" as now claimed. Defendant's very

17  recent amended answer gives a second admission on the same issue. Defendants provide the

18  Court with no reason to reconsider. Therefore the Court should apply the law of the case. See

19  *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (stating "the *same* issue presented a

20  second time in the *same case* in the *same court* should lead to the *same result*.") but then see

21  *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) (discussing conditions

22  where a Court may reconsider itself consonant with equity to do so).

23

24  _____

25  [5] The proposed amended complaint removed any reference to "ordered and/or required".

1    Not only does the law of the case apply, Defendants are also precluded from changing their

2  position because as shown, they have admitted that Plaintiff was not engaging in "**medical**

3  **examination"** but rather admitted "it advised Plaintiff to obtain medical information". See

4  Amended Answer at ¶ 15. An admission in an answer "constitutes a binding judicial admission,"

5  *Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005), and

6  "[j]udicial admissions are concessions in the pleadings that bind the party making them and that

7  withdraw a fact from contention." *Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir. 1998).

8  Thus until the complaint is actually amended, Defendant's would be barred from asserting a

9  "qualified immunity" defense under the terms they pronounce opposing the amendment, thus the

10  amendment cannot ever be futile.

11    Again, the proposed amended complaint reads, "On or about the week of February 16, 2005,

12  plaintiff was suffered and/or permitted to work in excess of 40 hours per week, to obtain and

13  submit medical information and/or documentation from his treating physician in furtherance of

14  the required medical clearance." See POC ¶ 23.

15    While there is no defined meaning in FAA orders to the term "medical information"

16  nonetheless, there are specific duties associated with it. In Plaintiff's EXHIBT 9, FAAO 3930.3,

17  at page 10 or ¶ 9d(3) it was Plaintiff's duty to:

18        "…submit medical information obtained outside of the agency which may be
        required in determining current medical status." *Id*.

19

20  "Medical information obtained *outside of the agency* should end Defendant's newly created but

21  late "qualified immunity" claim as the very essence of that claim depends upon an employer

22  initiated "**medical examination**" "performed under the ATCS Health Program." The

23  documentary evidence attached to Plaintiff's complaint at EXHIBT 6 states in pertinent part,

24  "Requested information due on or before clearance expiration date". The proposed amended

25  complaint at Plaintiff's Declaration further reads,

13

> "On or about February 16, 2005, at approximately 10:30am, while at the place of employment, "a call from medical" was received for which I was to obtain some Medical records from my doctor in order to continue the ATC medical certification; I was to submit the medical information obtained upon arriving to my Thursday, 'quick turn' midnight shift;"

Plaintiff had one duty, which was to comply and submit the information generated during a visit to his private doctor. On the other hand, Defendants had a duty pursuant to the same orders. In Plaintiff's EXHIBT 9, FAAO 3930.3, at page 10 or ¶ 9c(6) commands that "Facility management officials shall: … Participate with the medical officials when required, in obtaining additional medical information…."

Moreover, Defendants have only proved through their false "qualified immunity" claim, no prior policy existed under the circumstances of this case. Because the excerpts of the CBA provided by Defendants pertain only to "medical [clearance] examination" and not to any fact asserted in the proposed amended complaint, Defendant's qualified immunity claims must fail on their face.

**E. Plaintiff's FEHA Claim Is Fixed.**

With respect to Plaintiff's FEHA claim, it no longer suffers from the issues identified by your Honor giving rise to claim preclusion. Moreover, the name change, while it does defeat collateral estoppel,  was a necessary requirement as the California Supreme Court has made subsequent rulings requiring it.

**II. <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's request for leave to file an amended complaint should be granted so that he may come to the merits of this action.

Dated: September 17, 2009

Respectfully submitted,

By: __/s/_____

s/Greg Morgan
Pro Se